

**FILED**

SEP 2 9 2010

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

In re:                                )
                                      )
CREEKSIDE VINEYARDS,                  )      Case No. 02-30522-B-11
                                      )
          Debtor.                     )
_____        )
                                      )
                                      )
KATHLEEN LAGORIO JANSSEN, et          )
al.,                                  )
                                      )      Adv. No. 09-02085-B
          Plaintiffs,                 )
                                      )
vs.                                   )
                                      )
DAVID A. HIRSCH, et al.,              )
                                      )
          Respondent(s).              )
_____        )

**MEMORANDUM DECISION**

Plaintiffs Kathleen Lagorio Janssen, Chris Lagorio and Joseph Dondero (collectively, the "Plaintiffs") commenced this adversary proceeding by the filing of a complaint on February 2, 2009. On August 14, 2009, defendants David Hirsch and Donald Hirsch (collectively, the "Defendants"), filed a Motion to Withdraw Reference (the "Withdrawal Motion") pursuant to 28 U.S.C. § 157 in the above-captioned adversary proceeding. The Withdrawal Motion was transmitted to the United States District Court for the Eastern District of California, Sacramento Division on August 19, 2009. On October 16, 2009, the District Court,

-1-

1   Judge William B. Shubb presiding, issued its Memorandum and Order

2   Re: Motion to Withdraw Reference denying the Withdrawal Motion

3   without prejudice.  The District Court's memorandum decision

4   stated that the District Court declined to exercise its

5   discretion to permissively withdraw the reference until the

6   bankruptcy court made an initial determination of whether this

7   adversary proceeding is a "core" proceeding as that term is

8   defined in 28 U.S.C. § 157, or whether this adversary proceeding

9   is "non-core."

10       Pursuant to 28 U.S.C. § 157(b)(3), a bankruptcy judge may

11  determine whether a proceeding is core or non-core on the judge's

12  own motion.  This memorandum decision constitutes the court's

13  determination as to whether this action is core or non-core.

14       The following constitutes the court's findings of fact and

15  conclusions of law pursuant to Fed. R. Bankr. P. 7052.

16                           **I.   FACTS**

17       The Complaint filed by Plaintiffs (the "Complaint") alleges

18  a single claim for injunctive relief that seeks to enjoin the

19  Defendants from continuing to prosecute _Hirsch, etc., et al. v._

20  _Janssen, et al._ San Joaquin County Superior Court case no.

21  CV26757 (the "State Court Action").  The Complaint alleges that

22  this adversary proceeding is a core proceeding pursuant to 28

23  U.S.C. § 157(b)(2)(A) and (O) as a matter concerning the

24  administration of the estate or as a proceeding affecting the

25  liquidation of the assets of the estate or the adjustment of the

26  debtor-creditor or the equity security holder relationship.

27

28                              -2-

1   The complaint in the State Court Action (the "State Court
2   Complaint") sets forth five enumerated claims for relief for
3   breach of fiduciary duty, conspiracy to commit breach of
4   fiduciary duty and breach of contract, intentional infliction of
5   emotional distress, breach of California Corporations Code § 309,
6   and violation of 18 U.S.C. § 154.

7       The State Court Complaint alleges that Plaintiffs breached
8   or conspired to breach their fiduciary duty to Defendants by
9   improperly and unlawfully usurping control of Creekside
10  Vineyards, Inc. ("Creekside"), a closely held corporation in
11  which both Plaintiffs and Defendants were shareholders, prior to
12  the filing of Creekside's bankruptcy case on September 20, 2002.
13  (Dkt. 51 at 5-6).  Creekside is the general partner of a
14  Creekside Vineyards, LP, ("Creekside LP") a limited partnership.
15  (Dkt. 51 at 3).  The State Court Complaint also alleges that
16  Plaintiffs, after usurping control of Creekside, breached their
17  fiduciary duties to Defendants by manufacturing a financial
18  crisis for Creekside and then commencing Chapter 11 bankruptcy
19  cases for both Creekside and Creekside LP as a means of
20  preventing Defendants from continuing to prosecute state court
21  litigation by which they sought to regain control of Creekside
22  (Dkt. 51 at 6-9).

23      The State Court complaint also alleges improper conduct by
24  Plaintiffs in the Creekside and Creekside LP bankruptcy cases
25  which constituted an alleged breach of Plaintiffs' fiduciary
26  duties to Defendants.  The alleged improper conduct included

27

28                          -3-

1   entry into a compromise (the "Compromise") between Creekside LP

2   and Creekside LP's landlord regarding Creekside LP's lease (the

3   "Lease") of approximately 1,300 acres of agricultural land used

4   for growing grapes, which Compromise was allegedly entered into

5   for the sole purpose of perpetuating Plaintiffs' control of

6   Creekside and Creekside LP.  The Compromise was approved by the

7   bankruptcy court.  (Dkt. 51 at 10).  The State Court Complaint

8   also alleges that Plaintiffs breached their fiduciary duties to

9   Defendants by seeking authorization in the bankruptcy court to

10  sell Creekside LP's rights under the Lease to an entity

11  controlled by Plaintiffs as a means of perpetuating Plaintiffs'

12  control of and depriving Defendants of control of the Creekside

13  LP's rights under the Lease, allegedly Creekside's most valuable

14  asset.  (Dkt. 51 at 10-11).  The State Court Complaint alleges

15  that the Plaintiffs' "rigged" the sale that was ultimately

16  approved by the bankruptcy court.  (Dkt. 51 at 11, 13).

17      The State Court Complaint also alleges that the Plaintiffs

18  engaged in a scheme to deny Defendants of income received by

19  Creekside by applying the income received since August 14, 2001

20  to the reduction of Creekside's debt obligations, rather than

21  continuing a practice of distributing income to Creekside's

22  shareholders, including Defendants.  (Dkt. 51 at 11).

23      The State Court Complaint also alleges that the Plaintiffs

24  violated the statutory duty imposed by California Corporations

25  Code § 309 to perform their duties as directors of Creekside in

26  good faith and in the best interests of Creekside and its

27

28                                  -4-

1    shareholders.    (Dkt. 51 at 14-15).

2        The State Court Complaint also alleges that Plaintiff

3    Kathleen Janssen's purchase of the Lease through an entity

4    allegedly controlled by herself and the other Plaintiffs

5    constitutes a violation of 18 U.S.C. § 154.    (Dkt. 51 at 16-17).

6                            **II.    ANALYSIS**

7                A.    Core and Noncore Matters - Applicable Law

8        Pursuant to 28 U.S.C. § 157(b)(1), "[b]ankruptcy judges may

9    hear and determine all cases arising under title 11 or arising in

10    or related to a case under title 11, referred under subsection

11    (a) of this section, and may enter appropriate orders and

12    judgments, subject to review under section 158 of this title."

13        "[C]laims that arise under or in Title 11 are deemed to be

14    'core' proceedings, while claims that are related to Title 11 are

15    'noncore' proceedings." In re Harris Pine Mills, 44 F.3d 1431,

16    1435 (9th Cir. 1995).    Claims that arise under Title 11 are those

17    that involve a cause of action created or determined by a

18    statutory provision of Title 11.    Id., citing In re Wood, 825

19    F.2d 90, 96-97 (5th Cir. 1987).    Claims that arise in Title 11

20    are " 'administrative' matters that arise solely in bankruptcy

21    cases . . . [They] are not based on any right expressly created

22    by Title 11, but nevertheless, would have no existence outside of

23    the bankruptcy." Wood, 825 F.2d at 97.

24        28 U.S.C. §§ 157(b)(2)(A)-(O) set forth a non-exhaustive

25    list of fifteen types of proceedings that qualify as core

26    proceedings.    Collier divides the fifteen types into four

27

28                            -5-

1 | categories:  (a) Matters of administration, (b) avoidance
2 | actions, (c) property of the estate and (d) the "omnibus
3 | categories of core proceedings."  Collier places in category (a),
4 | inter alia, "all matters concerning the administration of the
5 | estate" (§ 157(b)(2)(A)) and in category (d), "other proceedings
6 | affecting the liquidation of the assets of the estate or the
7 | adjustment of the debtor-creditor or the equity security holder
8 | relationship, except personal injury or wrongful death claims" (§
9 | 157(b)(2)(O).  Harris Pine Mills describes the foregoing types of
10 | proceedings under §§ 157(b)(2)(A) and (O) as "catch-all
11 | provisions," but points out that in the Ninth Circuit, "'state
12 | law and contract claims that do not specifically fall within the
13 | categories of core proceedings enumerated in 28 U.S.C. §
14 | 157(b)(2)(B)-(N) are related proceedings even if they arguably
15 | fit within the literal wording of the two catch-all provisions.'"
16 | Harris Pine Mills, 44 F.3d at 1436-37 (quoting Piombo Corp. v.
17 | Castlerock Properties (In re Castlerock), 781 F.2d 159, (9th Cir.
18 | 1986).

19 | Claims that are merely "related to" a case under title 11,
20 | are, generally speaking, those claims that are owned by the
21 | debtor at the time the petition is filed and that become part of
22 | the estate pursuant to 11 U.S.C. § 541(a).  They may also include
23 | proceedings that take place between third parties.  See 1
24 | Lawrence P. King, et al., Collier on Bankruptcy, § 3.01[3][c]
25 | (15th Ed. rev. 2010).  The Ninth Circuit has concluded that a
26 | "related" proceeding is largely synonymous with a "non-core"
27 |
28 | -6-

1  proceeding.   See Benedor Corporation v. Conejo Enterprises, Inc.

2  (In re Conejo Enterprises, Inc.), 71 F.3d 1460, 1464, n.3 (9th

3  Cir. 1995).   A non-core proceeding "'does not invoke a

4  substantive right created by the federal bankruptcy law and is

5  one that could exist outside of bankruptcy . . . .'"   In re

6  Harris Pine Mills, 44 F.3d at 1435 (quoting Wood, 825 F.2d at 96-

7  97).   A bankruptcy court has jurisdiction over a related

8  proceeding when "the outcome of that proceeding could conceivably

9  have any effect on the estate being administered in bankruptcy."

10  Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3rd Cir. 1984).   See

11  also, In re Feitz, 852 F.2d 455, 457 (9th Cir. 1988).

12       Because the Complaint seeks an injunction preventing the

13  State Court Action from going forward, this court cannot

14  determine the core or noncore status of this adversary proceeding

15  based merely on the nature of the relief sought in the Complaint.

16  The court must instead analyze the State Court Complaint to

17  determine whether the claims alleged in the State Court Complaint

18  constitute core or noncore matters, as a claim in the Complaint

19  to enjoin a core matter in the State Court Complaint would be a

20  core matter for the purposes of the Complaint, and a claim in the

21  Complaint to enjoin a noncore matter in the State Court Complaint

22  would be a noncore matter for the purposes of the Complaint.   As

23  set forth in more detail herein, the court finds that the

24  Complaint in this adversary proceeding involves both core and

25  noncore matters.

26  ///

27

28                          -7-

## B.   The State Court Complaint

In the instant case it is difficult to determine the core or non-core status of the enumerated claims for relief set forth in State Court Complaint due to the manner in which it is pled, as each successive claim pled in the State Court Complaint incorporates all of the allegations contained in the preceding claims for relief.  The State Court Complaint pleads a series of "Background Facts" prior to the enumerated claims for relief, but then incorporates all of the "Background Facts" by reference into the first claim for relief for breach of fiduciary duty, in addition to pleading additional factual allegations under the first claim for relief.  All factual allegations contained in the Background Facts and under the first claim for relief are then incorporated by reference under the second claim for relief for conspiracy to breach fiduciary duty and contract.  This pattern is repeated for the third, fourth and fifth claims for relief, such that the fifth claim for relief for breach of 18 U.S.C. § 154 incorporates all allegations set forth under the Background Facts as well as the first four claims for relief, whether such allegations would be relevant to satisfying the elements of a claim under 18 U.S.C. § 154 or not.

As a result, rather than proceed to determine the core or noncore status of each of the five enumerated claims for relief set forth in the State Court Complaint, the court must determine the core or noncore status of the claims set forth in the State Court Complaint based on the nature of the facts alleged, i.e.

the specific events alleged and the relationship of those events to the Bankruptcy Case.

i.   The Fifth Claim for Relief in the
State Court Complaint  is a Core Proceeding

There is one exception to the foregoing approach.  The only enumerated claim that the court can clearly identify as a core matter is the State Court Complaint's fifth claim for relief for violation of 18 U.S.C. § 154.  That section imposes a penalty upon those persons who are custodians, trustees, marshals or other officers of the court who knowingly purchase property of the estate in which the person is an officer in a case under title 11, who knowingly refuse to permit reasonable inspection of documents and accounts in the person's charge, and who knowingly refuse to permit the United States trustee to inspect documents and accounts relating to the affairs of a bankruptcy estate in the person's charge.

This claim for relief, to the extent that it states a claim upon which relief may be granted to the Defendants[1], is a core matter because it arises in a case under title 11.  It is not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy, since the person upon whom the penalty is imposed must be an officer of property of a bankruptcy estate or a person in charge

---

[1] 18 U.S.C. § 154 is a criminal statute.  The Ninth Circuit has previously refused to apply its provisions to a civil case. See Donovan & Schuenke v. Sampsell, 226 F.2d 804, 808-807 (9th Cir. 1955).

1  of a bankruptcy estate.

2              ii.  Allegations Related to Pre-Bankruptcy

3                  Events are Noncore Matters

4        As to the other four claims for relief set forth in the

5  State Court Complaint, the court first finds that allegations

6  contained in the State Court Complaint related to events

7  occurring prior to the filing of the petition commencing the

8  Bankruptcy Case are non-core matters.  Those matters specifically

9  include allegations regarding the Plaintiffs' alleged usurpation

10 of control of Creekside and Creekside LP, the Plaintiffs' alleged

11 manufacturing of a financial crisis prior to the commencement of

12 Creekside's and Creekside LP's Chapter 11 bankruptcy cases and

13 the Plaintiffs' alleged denial of income from Creekside to

14 Defendant shareholders (collectively, the "Pre-Bankruptcy

15 Events").  To the extent that the Defendants allege that the Pre-

16 Bankruptcy Events constitute a breach of fiduciary duty, a

17 conspiracy to commit breach of fiduciary duty and breach of

18 contract, intentional infliction of emotional distress, or breach

19 of California Corporations Code § 309, such claims are based on

20 state law and could have been maintained in a state court whether

21 or not the Creekside or Creekside LP bankruptcy cases had been

22 filed.  Therefore, they are claims that are related to the

23 bankruptcy cases and are noncore matters.

24 ///

25
26 ///

27

28                                -10-

### iii.  Matters that require the interpretation of bankruptcy proceedings or bankruptcy court orders or are based on the Bankruptcy Events are core matters

Allegations contained in the state court complaint relating to the filing of the petitions commencing the Creekside and Creekside LP bankruptcy cases or allegations that require an interpretation of a bankruptcy court order or proceedings are core matters.  Such matters include the Defendants' allegations in the State Court Complaint relating to Plaintiffs' filing of the petitions commencing the Creekside and Creekside LP bankruptcy cases, the allegations relating to the Plaintiffs' authority to cause Creekside LP to enter into a compromise of the Lease that was approved by the bankruptcy court and the allegations that the Plaintiffs "rigged" the sale of the Lease from Creekside LP to an entity allegedly controlled by the Plaintiffs (collectively, the "Bankruptcy Events").

To the extent that such allegations state claims upon which relief may be granted that would entitle the Defendants to relief, they are core matters because the claims for relief upon which would be supported by such allegations must be found, and therefore would arise under, the Bankruptcy Code.  In the Ninth Circuit, the Ninth Circuit Court of Appeals has previously held that federal law preempts a bankruptcy debtor's action for malicious prosecution against a creditor.  <u>MSR Exploration, Ltd. v. Meridian Oil, Inc.</u>, 74 F.3d 910, 915 (9th Cir. 1996).  Although the State Court Complaint does not allege facts

1  supporting a malicious prosecution action, the MSR court's

2  rationale is useful to the court's analysis here.  The MSR court

3  reasoned that, as an initial matter, Congress expressed its

4  intent that bankruptcy matters be handled in a federal forum by

5  giving the district courts exclusive jurisdiction over bankruptcy

6  proceedings.  The MSR court also reasoned that the "complex,

7  detailed and comprehensive provisions of the lengthy Bankruptcy

8  Code . . . demonstrates Congress's intent to create a whole

9  system under federal control which is designed to bring together

10  and adjust all of the rights and duties of creditors and

11  embarrassed debtors alike." MSR, 74 F.3d at 914.  The MSR court

12  further reasoned that because the Bankruptcy Code already

13  provided a comprehensive scheme for the adjustment of the rights

14  of debtors and creditors in a bankruptcy case, and because the

15  Code also provided a complete and detailed set of remedies to

16  address creditor misconduct, the malicious prosecution action was

17  completely preempted by federal law.

18      The same reasoning applies in this case.  The allegations

19  based on the Bankruptcy Events, are allegations of wrongdoing by

20  Plaintiffs in the Creekside and Creekside LP bankruptcy cases.

21  The Bankruptcy Code provides a scheme of remedies for such

22  conduct.  As a result, to the extent that the State Court

23  Complaint alleges that such conduct constitutes constitute a

24  breach of fiduciary duty, a conspiracy to commit breach of

25  fiduciary duty and breach of contract, intentional infliction of

26  emotional distress, or breach of California Corporations Code §

27

28                                    -12-

309, those state law claims are federally preempted by the
Bankruptcy Code.  Therefore, to the extent that the Defendants
seek redress for their claims based on the Bankruptcy Events, it
must be found in causes of action provided by the Bankruptcy
Code.  Any claims for relief that Defendants might assert based
on those allegations would therefore arise under title 11 and
would be core matters.


Dated: SEP 29 2010

Thomas C. Holman
United States Bankruptcy Judge

-13-

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF CALIFORNIA**

**CERTIFICATE OF MAILING**

     The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was mailed today to the following entities listed at the address shown on the attached list or shown below.

Andrea T. Porter
150 Spear Street #1600
San Francisco, CA 94105

Robert D. Nelson
4008 Cayente Way
Sacramento, CA 95864

DATED: 9/29/10

By: _Melissa McIntosh_
**Deputy Clerk**

Melissa McIntosh

**EDC 3-070 (New 4/21/00)**